I thought for a moment there we were at Groundhog Day, or we were repeating. All right. Good morning, counsel. We are missing our third member. It is Justice Mary Shostak. She is unable to be with us today. However, she will consult with us and conference with us as we prepare this disposition. She will also listen to your argument. So please make sure when you speak you're speaking clearly so that she can hear. Sometimes we don't have the best audio. And so adjust the microphone accordingly so that you can speak into it as rather speaking up to it or down to it. All right. So we will begin then. Ms. Parsons. That should do it. Your Honors, counsel, and may it please the Court. My name is Jessica Parsons, and I represent the plaintiff, Jonathan Reisner. Mr. Reisner, we respectfully ask that the Court reverse the trial court's orders granting both of Target's motions for summary judgment, reverse the trial court's order denying Mr. Reisner's motion to compel documents related to the design of the building, and to reverse the trial court's order denying Mr. Reisner's motion to reconsider the granting of the second motion for summary judgment and to remand the cost to the trial court for further proceedings. Could we talk just briefly, I don't want to take you off your script, but is there anything in the complaint that alleges faulty design, faulty construction, faulty anything that would require additional records that you've requested? Yes, there was an allegation that the design of the floor caused water to pool. I think the actual words used were water spout, but there was an allegation about the design of the floor making it more likely for water to unnaturally pool and accumulate and cause a hazard. And then also, not so much, well I guess sort of, so there's also allegations about the actual vestibule where the carts are, basically how the carpet is laid out, it's not, it doesn't cover as much of the tile as the entrance vestibule, so there's allegations about the general design and layout of the entrance and the exit as well. And you did get some records as a result of that request about incidents that may have occurred there from a period of time until the present? Right, but the court wouldn't compel the production of anything related to store design, because it was of the court's opinion that that sort of documentation wouldn't be relevant until there was an expert procured to testify to the design of the store. But, I mean really, if you think about it, the judge saying that there needs to be some evidence to determine what's relevant for discovery is kind of counterintuitive to the whole purpose of discovery, which is the ascertainment of truth. Let me ask you some special questions. I mean, the overarching hurdle, I think, initially for you to get over is general well-settled law is, you know, I'm not saying low-handed, is a general rule a landowner has no liability for injuries resulting from natural accumulation of substances such as water, ice, or snow. They go on to say landowners also have no duty to continuously remove tracts left by invitees or customers who have tracked in, you know, the snow and the ice. So, how do you overcome that general rule in this case? Sure. Okay. So, first of all, depending on different courts, natural accumulation is generally a question of fact for the jury. For instance, in Turner v. Cosmopolitan of National Bank of our first district, there was a vestibule to a bank and the door would close all the way and water and ice would blow in through that door. The jury found that to be a natural accumulation. And so then this court in McLean v. Rockford Country Club, they kind of looked at it in different ways, saying that natural accumulation, that rule doesn't apply to the actual owner who may operate the business on the premises. Even if we take that out, the analysis kind of goes like this. So, accumulations can become unnatural when they're caused by a defective condition or insufficient maintenance of the business owner. There's a common law duty. There's also the duty that was codified in the municipal code that business owners are to keep a reasonably safe means of ingress and egress, and that duty includes giving an adequate warning of a known... Well, that may all be true, but I think what we'd like you to do is you cited out the exceptions, and there are some well-settled exceptions to that rule, but tell us how the pleadings in this case support any of those exceptions. You've alluded to them. Sure. What did Target do or not do that would bring those exceptions into play? Okay, so that's where we get into Donahoe. So, if you look at Lohan, Lohan, it was water that was trapped in by the entrance. But we're not saying that there was some flood, something internally within Target's store that caused the water to be there. Did it have to be trapped in? For it to be an unnatural accumulation, if it's found to have been placed on the floor by a servant of Target and related to their business operations, then it counts as a natural accumulation, and then there's a duty to either give adequate warning of that condition or to repair it. So, there's a question of fact. So, if – and the thing is, too, the fact that it could just possibly be trapped in by a customer, that's not enough to get over a question of fact about it being an unnatural accumulation caused by the store. You would have to raise – it has to be a legitimate question of fact. And you've also thrown in something else that was interesting, and I was looking for, as I read through the record in the briefs. You talk about putting a cone there of warning the employees, the customers. Isn't that what Target did? Wasn't there a cone that was placed there that the plaintiff didn't deny seeing the cone? Wasn't there a cone? There's a cone there, but there's still a question of fact as to whether it adequately warned of the actual puddle where it was. I mean, after Mr. Reisner fell on the puddle, the cone was moved closer to the puddle. There's a question of fact to the visibility of the puddle. Mr. Reisner testified that he wasn't distracted and he didn't see it. And, you know, even though this isn't really, in my opinion, an open and obvious case, when there's a question as to the visibility of the condition, that's actually a question. Let me ask you a more poignant question. What should Target have done that wasn't done here that provides the basis of liability? What specifically did they fail to do or do? We've got a store. It's a rainy, snowy day. Customers are always going to track in, what, snow? It's raining out and snowing out into the store. Nobody can prevent that. We're not suggesting the store closed down, right? So what should they have done that they didn't do? So I guess the question of fact is to whether, you know, the cart attendant, whether when he was wiping off the water, he somehow caused it to go on the floor. Was the area inspected enough? If it was being inspected, did they fail to discover the puddle and clean it up? But aren't those matters of trial evidence? I guess I'm asking you as the threshold pleading requirements, wouldn't you have to allege facts that would support that? You're raising a lot of potential theories. But were the factual allegations specifically to support those theories? That it was caused by the cart corral, the negligent maintenance of the cart corral. How was it negligently maintained? Well, there's the fact that the carpet didn't cover the whole area, that there's testimony that the wet carts would hang off the carpet and water would drip onto the tile. There's testimony that Target knew it was common for the water to drip off the cart under the tile. So, I mean, it raises a question of fact. You know, if it was caused by them and it was unrelated to their business operations, you know, they can try to rebut it by saying it was reasonable under the circumstances. But at this point, we're just asking is there a question of fact to even go to trial. And there's enough circumstantial evidence in the record to show that it was more likely than it was more probable that that water was caused by Target somehow regarding the maintenance of the cart or regarding cleaning up the water after it came off the cart. The fact that the water was by the carts, that it was in the exit, that it wasn't possible for customers to walk into the exit. Under Donahoe, any circumstantial evidence such as the location of the substance or the business practices, no matter how slight, it's enough to cause a question of fact for the jury. So the possibility that it could have been by a customer, it doesn't totally throw this case out on summary judgment. Now, a jury might still find that Target didn't do anything wrong. But at this point, it's whether there's a question of fact to send to the jury. And there's a question as to where that water came from. Was there any evidence that plaintiff's boots themselves were wet? After he fell, they were wet. But they were wet when he came into the store? Not that I can recall, no. So are you essentially saying that this, you understand that this could have been a natural accumulation or the results of natural accumulation, but Target didn't take care of it properly? Or you're not saying this was natural accumulation at all? I'm saying there's a fact, yeah, there's a question that it's not natural accumulation. Because if it was caused by an action by Target, in furtherance of their business, as opposed to a customer just walking in through a puddle, obviously, yes, Target can't constantly, as people are coming in through traffic, they can't be constantly cleaning up the tract of water like the case law says. Can't stop the snow from falling to the sky, but the case law also says that maintenance and repair, that's always in Target's control. And I think the fact that this was by the cart corral, by the exit, it wasn't possible for customers to enter through the exit. There's video footage of the cart attendant wiping carts off the corral, shaking his hand towards the ground very closely before the incident. This is all enough to create a question of fact that this wasn't just water dripping off the customer's shoe. So if we get into another significant issue in this case, and that is your interpretation, you've argued that the decaled ordinance, like the Beach Act, creates a duty on Target's behalf where nonexistent common law, regarding the presence of a natural accumulation. So how does this statute help you in this case? Okay, so for a statute to impose a duty that didn't exist at common law, you know, there's the criteria, it's got to be a statute to protect human life. And then the injured person has to be in the class of persons that that statute was meant to protect and to protect from the kinds of injuries that he sustained. Well, the decaled property maintenance code expressly states that it constitutes minimum requirements for protection from elements and for life safety. Its expressed intent is to ensure health, safety, public welfare. And then it codifies the common law duty, more or less, to provide the reasonably safe ingress or egress. So, you know, and the court, up until the second summary judgment motion, the court found that the statute did, in fact, impose a duty based on those criteria. And then whether or not Target breached the duty, that's a question for the jury, whether the violation of the statute proximately caused Mr. Reiser's injury. That's also a question, in fact, for the jury. How would you respond to this argument, which perhaps counsel in their set may be raising? I think you make a strong argument on the elements. It was designed to protect life. It was designed to apply to the class of persons, which plain up belongs. I think you've got the prima facie elements there. But what about that specific language that could be fatal to your argument, that it wasn't intended to abrogate or nullify provisions of state law? Well, so the difference here is... It isn't the case law? Maybe we'll call upon interpreters. Isn't the common law of entry accumulation more part of the state law that you're seeking to nullify or overturn? Okay. So, no. So there's two ways that you can use a statute to bring a private cause of action. One is when the statute either expressly creates a cause of action, which there are some out there that do. If not, you can apply it. Or you can use that statute as prima facie evidence of negligence based on those criteria that I just explained earlier. And so kind of what the case law tells you is, if you're trying to apply a cause into the statute, you've got to construe it strictly. When it derogates the common law, you've got to construe it strictly in favor of the defendant that's subject to it. That's what Target's going to say. You can construe it in their favor. That's what Target's going to argue. The state law. You have the natural accumulation rule, which we acknowledge. That's the general rule with a bunch of exceptions. So you've got the ordinance, but it ends up saying it's no provision of this shall nullify any provisions of local or state law. So aren't you trying to use this to overcome the natural accumulation? Well, no, because we're using the statute as prima facie evidence of negligence, which statutes as prima facie evidence of negligence. That has been a long-recognized common law claim as well, regardless of whether or not there's a duty of the common law. And that's precedent that's been around since May v. Yellow Cab, out of our Supreme Court in 1954. It was reiterated in Abbasi in 1999. And yet the trial judge didn't buy that argument, right? Well, because he kind of conflated. He sort of merged the statutory cause and the using as prima facie together. So the trial judge came to the conclusion that, okay, so if this statute meets these criteria, it can be prima facie evidence of negligence. But if it imposes statutory fines, then it can't. Well, again, they're two separate concepts. So most of the time when there's a common law remedy, such as a prima facie negligence action, you're not going to apply the cause into the statute. And I can't find any case law where anybody really has, because you can use the statutes as prima facie evidence of negligence. And the case law even says that the fines are relevant also if you're trying to imply the cause under the statute. And there's different criteria for that, which I'm out of time, so maybe I can come back to them later. But anyways, for prima facie, the fines are irrelevant because the purpose of the fines are to deter people from violating the statutes. And then a coinciding common law action, the point is to make a plaintiff whole after being injured by a violation. No, one time early on, Andrew, the time's gone. You went over your time. You were citing the Beach Act, obviously, in support of your argument, analogous argument, but the Beach Act didn't contain any language, did it? Anything about not nullifying state or local law? That wasn't in the Beach Act, was it? Well, no, but also— So wasn't that a distinguishing factor? Only if I was bringing a cause under the Beach Act. If I was just trying—so I think there's different— the criteria for bringing a cause directly under a statute, they're similar to the prima facie negligence. Like, it's the same thing. Well, there it was open and obvious. Right, and then because that statute fit those criteria, it didn't matter that there was no open and obvious duty of color. Exactly, but they didn't have any proviso or any note that says about derogation of the common law. It was just what it was, and then it was ultimately— I think the trial judge also looked at it and said, well, yes, it was ultimately a modified or amended, and that changes it, too, but he wasn't worried about dollars, fines, or anything of that nature with the Beach Act, correct? Right, but I mean, I guess so—  There was the Public Utilities Act, which expressly stated that any violations of the acts enumerated in this, any public utility shall be liable to the persons affected by this for damages or injury caused thereby or resulting therefrom. So therefore, you don't need to bring a separate common law action to get a private remedy. And admittedly, the statute didn't intend to do that. No. Again, I'm only asking you just what your interpretation is of the meaning of that language about not nullifying state law. We want— Your explanation is— The actual words, so, you know, they say provisions of state law, provision by definition is a word in a statute. Then we've got the OSHA statute, or OSHA regulation and ratio, which specifically states we're not going to enlarge or abrogate remedies under the common law statutes or otherwise. But regardless— Could it also be interpreted we're not going to remedy and nullify common law defenses either? Is that what it could mean? Well, but if we're just using it as prima facie evidence of negligence, then all the other defenses still apply. We're not trying to impliedly create a tort by the statute alone. This is a common law negligence action where the duty is established based on the criteria, and then if you violate it, then you have the opportunity to say you acted reasonably under the circumstances, and then you still have to approximately cause the injury. So all it kind of does is it makes the duty analysis more streamlined because of the duties enumerated to protect human life. We're not trying—so like the Public Utility Act, which expressly creates a tort under that Act, what the case law says is when there's other statutory causes of action that don't expressly state that, there's certain factors you can use to try to imply a private cause into that statute. But as I said previously, I haven't really found any case law for that because there are other common law remedies that will make the plaintiff whole, such as the prima facie negligence. Like there's a bunch of the nuisance cases where these cases, they're just declaring things a public nuisance, and there's other—the plaintiffs are trying to just recover a private remedy based on the violations of that statute. And in one of the cases, they say, well, you have a prima facie negligence action that would be identical to bringing a private cause under that statute. Therefore, there's no reason to imply a tort under the statute because you have other common law torts that you can recover under to make whole. So implying a cause—if I was trying to imply a cause right under the ordinance as opposed to using it for negligence, then there would be an argument to be had about it not nullifying the common law. But since I'm not trying to imply—because Mr. Reiser is not trying to imply an actual tort into this statute, anything about it nullifying the common law for prima facie negligence purpose doesn't preclude the prima facie negligence action, if those other criteria are met. Counsel, you'll have an opportunity to reply after your opponent makes his reply to you, if you so choose. But your time is up. Thank you. All right. Mr. Lenkow? Lenkow. Excuse me. Lenkow. Sorry. No problem. This is the court. Your Honor's counsel, my name is Rich Lenkow. I represent Target. And I just want to touch on something counsel said in reliance on Donahoe. Donahoe doesn't stand for what counsel said it stands for. Donahoe is entirely different from this case. In Donahoe, that was an onion. The substance was an onion at a restaurant that serves burgers. The burgers include onions. So the court concluded that because onions are regularly served by that landowner, that premises owner, then you can infer that the onion got on the floor because of some negligence. And they said in addition to that fact, in addition to the fact that the substance was sold or produced by the landowner, you can also look at other circumstantial evidence. Counsel would overturn natural accumulation by only relying on circumstantial evidence. That's the key difference. Donahoe said you have to have the evidence that is related to the business and also circumstantial evidence, not just circumstantial evidence. In this case, there's no evidence that we sell puddles of water, right? We don't sell puddles of water. We sell retail items. Well, there is not only evidence but common sense that if it's raining or snowing outside and the carts are left outside and the cart corrals there, when they come in, they're not going to be magically dry. They're going to be wet. Agreed. Of course. And that supports the natural accumulation idea that Your Honor mentioned. Natural accumulation is not something that we invented, obviously, for the purposes of this discussion. It's a longstanding case law in this state as in every other state. And the natural accumulation idea is that it removes a duty from a landowner because of the fact that it's natural. Because, as Your Honor stated, what can a landowner do? I believe Massachusetts or Massachusetts or Maryland, it's one of those end states out east, have changed that. They have gone away from it. All right. You said it's just too much trouble, which tends to be a good argument. It is too much trouble. Because what's natural, what's not? Is it the ice that formed as a result of the night before when it got cold and we didn't think it was going to get cold? What's natural? Could be. Could be in Massachusetts. In this state, at least, that's still the law. And as a preliminary matter, I don't even believe that most of the arguments that counsel presented should be heard. They did not raise the unnatural accumulation arguments that they raised in their brief and today in the circuit court. So as a matter of course, they should not be considered. But even if you do entertain them, Your Honors, to underline what was said earlier, to distinguish the other cases, this is a low-hand situation. Low-hand, as Your Honor pointed out, was tracked in water. This is tracked in water. The cases that counsel relies on to prove, allegedly, that this is different, all are different fact scenarios. The one case in law is. Let me just interject this. Yes, sir. I mean, your point is well taken. I brought up the fact that low-hand would seemingly apply in the general rule is that the natural accumulations do not expose the man or woman to liability. Or, in the case of the low-hand, you don't have to continuously wipe up the floor every minute. However, what about the argument that there are exceptions to the general rule, as you know, in the North Shore? What about the argument that the cards are returned in such a way that they overhang from the carpet onto the tile? What do you make of that argument? That's a little different than natural accumulation. It's an interesting theory, but there's no evidence of it. As Your Honor pointed out, there's no evidence. There has to be some evidence, right? In order to proceed, basic rule of summary judgment is it's meant to avoid wasting time, for lack of a better term, when the facts are such that there's no other conclusion that a jury can reach. In this case, there's lots of theories. I give counsel credit for putting forth a multitude of theories, none of which are grounded in evidence. You have to have some evidence. By the way, counsel had every opportunity to secure that evidence through experts, through documents, through production requests. They didn't do that. So wasn't any employee that I read somewhere that said that they overhung the cards sometimes, that they were overhanging the tile? That wasn't in the oven? There's testimony that, you know, as Your Honor pointed out, that one employee said that there were sometimes – the car was still sometimes wet after he wiped it. But there's no testimony as to where that was or when that was exactly. There is testimony, as Your Honor points out, about the location of the cards versus the tile and the rug. But none of that leads to the conclusion that this was more than a natural accumulation, exactly like Lohan. In all the other cases that counsel points out in their brief, these are very distinguishable. There are cases involving – like in the case involving the awning and the downspout. Those are all understandably unnatural accumulations. Those are things that the landowner did to transform a natural accumulation into an unnatural one. None of that happened here. This is a simple situation where it's raining, it's snowing. Customers are walking in and bringing in natural accumulations from the outside. What about the potentially conflicting statements from either the store manager, the front-end manager, a cashier, and then young Matthew, who was responsible for the cards? One of those – and I thought it was the store manager – said, well, it wasn't wet. And everybody else said – the front-end manager said, I checked periodically and made sure it was being taken care of. But the two other employees who were right there at the time of the fall said, oh, yeah, it was wet. I mean, you know, we have this conflicting issue between the store manager – and I understand he or she wants to stay the store manager, so they do their best – but didn't see it. And we have these two people who didn't see it but came right away after the incident.  Yeah, I think the great majority of the evidence, if not all of it, points to the fact that there was water on the floor. There was a puddle on the floor. Plaintiff admits that. We admit that. There might have been some contrasting testimony. I mean, generally, when you get to these depositions, of course, it's much later. Some people have gone. Their memories aren't the same. I don't think there's much dispute in the record that this was a slip-and-fall on a wet floor. So, I mean, you know, taking all of the facts in the light most favorable to plaintiff, I think this is a slip-and-fall on a floor. And there's, you know, there's a variety of theories that plaintiff points to. Again, they had every opportunity to provide evidence supporting their theory, and they did not do so. I'd like to quickly address, because I'm running out of time, if I might, the municipal code. This is a building code, right? This is meant to keep buildings safe. It is meant to make sure that they are safe for patrons. It's not, by any stretch, meant to overturn years of case law and precedence and common law on natural accumulation. It's not meant to allow a litigant to circumvent years of common law to pursue a private action. Why don't you expand her argument, though? This is an adjunct that it creates a prima facie cause of action. What do you make of this prima facie argument? Well, a couple things. Counsel, I think, is using prima facie to mean negligence per se. They refer to that in their brief in the trial court. Later, they said that was a mistake, that was a typo in the brief before Your Honors. They say it doesn't matter what we said before, this is what we really mean. It actually does matter because it evidences their intent. They're intending to use this code as negligence per se and that is automatically, that automatically means the defendant is liable. That's not what any case law ever says. Well, that certainly would, if it was negligence per se, it certainly would cause problems with the language of the ordinance. Agreed. This does not intend to abrogate or change any state law. But I think she did, or whoever argued at the trial court level did make it clear that it was just evidence, strong evidence, if they could meet the criteria of why this safety regulation was in place and, two, that their client was one of the persons who should have been or was designed to be protected. And so does that change the language of the abrogation language that wasn't in the Beach Act? And I don't think it was in that other Cook County case either, but I can't remember the name. Yeah, I don't think so. I think it's clear and I think, you know, it's easy sometimes in the volume of documents and case law to make things more complicated than they are. This is simple. There's a local ordinance. The local ordinance drafter said specifically, we don't want this to overcome state law. We don't want this to nullify state federal law. If they wanted to, they would have said so. They went out of their way to say, yes, this applies to our buildings here in McHale. We don't want it to overcome, you know, common law theories of natural accumulation. So they said that. Well, how exactly would it change the natural accumulation law if the allegation is the building, there was water in the only way the parties could egress because this was not like Walmart where everybody's walking in the enter and walking out the exit. You know, they're walking in and out of both enter and exit like they don't know the difference in the words. And Mr. Reisner was one of the persons that we were trying to protect when we enacted this ordinance. It's just water at that point. It's a substance that shouldn't be on the floor. How does that derogate the common law? Because that's not what, A, that's not what the code says. It doesn't get into that specifics. It talks generally about keeping egress and ingress safe. It doesn't refer to the situation that we have here. Secondly, it would, in effect, nullify what is a bedrock principle, that natural accumulation nullifies a duty owned by a landowner. It would circumvent that entirely. And, you know, to grant that would basically say that this, no offense to DeKalb, I went to school at NIU, so I love DeKalb, but that this local municipality who expressly said, by the way, we don't want to do this, that would circumvent years of common law that's grounded in law and jurisprudence that, by the way, you could circumvent this by showing that, you know, by showing that there's water on the floor. I mean, water on the floor doesn't qualify as a violation of the municipal code. You're asking us to, I suppose you could say it would be obvious, state law. It doesn't say common law or state law. It says state law. Suppose one could make a super technical argument. They could be talking about other state statutes. But you're saying what you would believe would be obvious, state law would also have to be common law provisions and defenses. Absolutely. There's also the premises liability act, which is state law, which is clear state law. But, you know, to overturn Judge Brady's decision would have to ignore what the case law says. I'm happy to look at the case law that counsel, you know, provides in support of their theory because it doesn't support their theory. As Your Honor pointed out, beer is distinguishable in many ways. A, it's not a natural accumulation case. It's open and obvious. Well, but it was open and obvious, which is also the law. It's a law, but it has a lot of exceptions. The major difference is natural accumulation is a hard and fast rule, and if it's proven, there is no duty. Open and obvious is different. It's not, you know, as strong because there are exceptions. There's the distraction exception. There is the other exceptions, so it's a much weaker standard than natural accumulation. The most important way, or the two most other important ways that beer is distinguishable, as Your Honor pointed out, is there's no fine provision. It's, I guess, logical or understandable to look at a statute and say, let's look at whether it expressly provides a remedy outside of the act. It doesn't do that. We all can see that it doesn't do that. So it doesn't imply that. The reason it would imply that, as beer points out, is if the act itself was not an adequate remedy, whether it didn't have fines and whether the type of relief is not granted in beer. This code does have fines, as it did in Thompson. Thompson is a case directly on points. Thompson had less fines, by the way, than we do. The count has a $500 fine. The Thompson fine only had a $200 fine. So if the court, the Supreme Court in Thompson said the $200 fine is enough, how could a $500 a-day fine not be enough?  Also, counsel relies on, you know. But who, I guess the issue then is who's being protected by this ordinance? The city of DeKalb, or is it the person who falls? I think that the code, the city of DeKalb municipal code, is meant in part to protect people in buildings. And a violation of that code protects those people because it provides a fine. It provides a fine per day that, again, is more strong than the Supreme Court found was adequate in the Thompson case. So I don't know how you could, unless you overrule the Supreme Court in Thompson, find that that is not an adequate remedy. This is an adequate remedy. Counsel also refers to, you know, codes and ordinances that deal with smoke detectors and traffic violations. The major difference there is that there is no common law. There's no common law with regards to smoke detectors or, you know, traffic violations. There is common law, longstanding common law, dealing with negligence, dealing with natural accumulation, all of which plaintiffs tries to abrogate by applying this municipal code. What about the motion to compel the design issues of the store? I know some evidence was allowed about incidents that may have occurred at the store. Yes. But why did you object to the other, any other evidence or any other information being disseminated? Because there was no evidence that there was. It was a fishing expedition, for lack of a better term. There was no evidence of anything else which we disclosed in our answers. Counsel made some reference. I think what happened was the judge, having shot the target, said, oh, I thought there might be some construction, so I'm going to, you know, perhaps allow that. But there was no evidence of anything else. So, you know, the court gave counsel an opportunity to pursue that. They had every opportunity per the court's order to hire an expert to come back on a motion. They didn't do any of that. And it's hard to allow them now to do that all this time later when they were afforded that opportunity, failed to do so, and now we're asking the court to, you know, reverse time and go back and allow them to do that. Well, this is a little like chicken and egg. Counsel said we have to have an expert who says there's a problem before we know what target actually is going to say. Well, the problem with that is the one major issue that I think would have been raised was where the carpet ends and where the tile begins and how many carts can fit within that cart corral. That's pretty obvious just looking at it, isn't it? I mean, if you go into a target store, you see that there are carts in there. You see that those carts exceed the carpet or their length goes past the carpeted area. And we know as a matter of common sense that tile is a lot slipperier than most carpet, correct? So why can't we have that information disseminated without an expert? Well, that wasn't what counsel was seeking. They were seeking evidence of a renovation of the store. They had every opportunity to seek information about tiles and rugs. That's what happened during discovery. What they were seeking was additional information with this alleged renovation that, you know. Was it a design flaw? Is that a design flaw theory? I'm not sure. Thanks, Your Honor. Any other questions? Do you have anything? Thanks very much. Appreciate it. Thank you very much. Ms. Parsons. A couple of follow-up points, Your Honor. First of all, assuming that whether or not the municipal code derogates the common law or not, assuming that it is relevant to a prima facie negligence analysis, the second district in McLean, that was the case where the icicle fell from the roof at the country club, the second district interpreted the common law rule regarding a business. So they distinguished the natural accumulation rule between the actual landlord who owns the property as opposed to, in Target's case, a landlord who actually operates a business on the property. This district's analysis in McLean was that if you're operating a business and you have this common law duty to provide a reasonably safe egress or ingress, then the natural accumulation doesn't apply. And it makes sense because if I'm a landlord and I own a strip mall and the parking lot's icy if somebody slids, I own the building, I can't stop the snow from falling. The weather, you know, in Chicago, you just can't control that. But then if I own the building and I'm also operating a business, then I have this duty to maintain a reasonably safe ingress and egress, and then there's just a question of fact again as to whether that accumulation was natural. And even if it was, was it something that I could have prevented? Well, McLean was a significantly different procedural posture, too. It was a pleading posture. Have sufficient facts been pled to establish a cause of action? This is a motion for summary judgment, and we're talking about facts. We wouldn't have been through all of that in the McLean case, would we, on a 615? Well, either way, so there's the pleading of the facts. This is going further. We've pled the facts. Do we have the evidence to more or less create the question of fact on the facts? So even procedurally, if it was different, whether we dismiss it for lack of cause at the pleading stage or at summary judgment, the underlying concept's the same. Is there this lack of duty because of that? Yeah, but is it really the case? Because the hurdles are going to be greater in a summary judgment. You can plead any theory. That's going to get you passed the 216 motion, but when you look at the depositions, the affidavits, test other things, whether it's a genuine issue of material facts, you have to plead at the same period of time. Right. And as I discussed previously, there's plenty of circumstantial evidence in the record, and when drawing all inferences strictly in favor of the nonmovement of plaintiff, the inferences can be drawn that this was caused by Target's failure to maintain this reasonably safe egress. There's inferences that can be drawn to say that the water was placed on the floor by the Target employee wiping the carts. It doesn't matter that they don't sell puddles of water. The question is whether it's related to the business operations. If it's related, the cart attendant wiping off the carts, then it's fair of you to go to a jury. Also, quickly, regarding the expert testimony, Peach v. McGovern, that was a case where a trial court, again, different procedurally, but this was at trial, found pictures after an accident were inadmissible without expert testimony. The court said expert testimony is not necessary in discovery or at trial when the evidence presented is something that a jury can understand with their common knowledge. Well, without these blueprints to look at, how do we determine whether or not we need an expert to help the jury understand them or whether we can present them to the jury themselves? With that, it's relevant to determining whether we need an expert. It's relevant for the expert to form testimony. Well, this store update was already over, correct? Right. We weren't in the throes of the update. There weren't construction cones all over. But if there was something to show that because of this renovation, there was some kind of defect in the floor, then that would be relevant towards targets. Well, couldn't you have seen that? I mean, wouldn't that be visible? I mean, the way you're motioning your hand, you're making kind of a little valley. That's a picture I have in my head. You're being recorded, so remember, any motion you make by the hand. I don't know how to really describe it. You describe it for me. But there's nothing that you could look at and say, Whoa, there's a valley in that floor, and something's going to collect there. We didn't see that. Your client didn't say that, did he? No. Okay. There was the allegation that the floor was defectively designed, which is where those documents would be relevant. Thank you. All right. Thank you, counsel, for your argument this morning. We will take the matter under advisement, consult with Justice Shostak, and we will get a decision to you in due course. Thank you.